**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DION L. HOUGHTALING,

      Plaintiff,

v.                                 Case No. 8:03-CV-2733-T-30EAJ

RICARDO F. TIRADO-MONTES;
P. BAILEY; P. WAIT; FLORIDA
DEPARTMENT OF CORRECTIONS;
JAMES V. CROSBY,

      Defendants.

_____/

<u>ORDER</u>

      This matter comes before the Court on Plaintiff's Second Amended Complaint filed pursuant to 42 U.S.C. § 1983.[1] Plaintiff is incarcerated at the Hardee Correctional Institution, Bowling Green, Florida ("HCI").

      Plaintiff names as defendants Patricia Ann Bailey, Senior Licensed Practical Nurse, HCI, Patricia Louise Wait, Nurse, HCI, the Florida Department of Corrections ("FDOC"), James V. Crosby, Jr., then Secretary of the FDOC, Dr. Kye C. Pahk,  M.D., a private practitioner with a specialty in urology, Adventist Health System/Sunbelt, Inc., d/b/a Florida Hospital Lake Placid, and Ricardo F. Triado-Montes, M.D., Chief Health Officer, HCI.

      In his Second Amended Complaint, filed on May 12, 2005, Plaintiff seeks monetary and injunctive relief on grounds of "deliberate indifference to [ ] serious medical needs in violation of the Eighth Amendment to the United States Constitution. . . . [and] the tort of

_____

[1]Plaintiff, a State of Florida inmate proceeding *pro se,* initially filed a complaint in the Tenth Judicial Circuit Court, Hardee County, Florida, on or about June 14, 2002.  Defendant Florida Department of Corrections removed the case to this Court on December 31, 2003.

medical malpractice." Plaintiff's claims are based on events which occurred between October 20 through November 1, 1999, inclusive, while he was incarcerated at the HCI.

## Background

On October 21, 1999, Plaintiff reported to the HCI medical facility complaining of pain and swelling in his right testicle, a burning sensation in his urine, and flu like symptoms, including headaches, fever, and chills.  The results of a urine test administered by Defendant P. Bailey indicated that Petitioner had a urinary tract infection. Defendant Bailey telephoned Defendant Triado-Montes and reported the results of the urine test and Plaintiff's symptoms to him. Defendant Triado-Montes likewise concluded that Plaintiff was suffering from a urinary tract infection and ordered that he be given antibiotics.

Over the following six days, Plaintiff reported back to the infirmary four times a day for medications.  When Plaintiff's condition failed to improve as rapidly as he anticipated, he informed infirmary personnel that he was still experiencing pain in his right testicle and had difficulty urinating.  A second urine test confirmed the results of the first test. Plaintiff was advised that it would be a few days before he would experience the full effects of the antibiotics. When Plaintiff's temperature rose to 102° on October 27, 1999, he was transported to the Florida Hospital Heartland Medical Center ("FHHMC") where an ultrasound revealed that no blood clots or abscesses were discernable within his swollen testicle.

Plaintiff was advised by Dr. Caruthers, FHHMC, that there was no clotting of blood in Plaintiff's epididymis, which if found, would almost assuredly result in an epididymectomy. Plaintiff was told by Dr. Caruthers that since no clotting was found, the testicle "could possibly be saved." Plaintiff was then transferred to Florida Hospital Lake Placid.

-2-

Defendant Kye C. Pahk had assumed duties as Petitioner's treating physician.  On November 1, 1999, Defendant Pahk ordered a second ultrasound of Plaintiff's testicle. According to Plaintiff, he was again informed by an unidentified person that there were no blood clots or abscesses discernable in his testicle.  After reviewing the results of the second ultrasound, however, Defendant Pahk was of the opinion that the testicle should be removed.

Plaintiff states that he relied on Dr. Carruther's statement that his testicle could "possibly" be saved if Plaintiff did not develop any blood clots or abscesses, "combined with the Plaintiff feeling better and that his testicle had stopped swelling further" when he rejected Dr. Pahk's recommendation that the testicle be removed the following day (Dkt. 2 at 18). Petitioner informed Dr. Pahk that he would like to wait a few days to see if his condition continued to improve or have a second opinion regarding the proposed surgery.  Petitioner states that Dr. Pahk became upset when his recommendation that the testicle be removed was rejected.  Plaintiff further avers that Dr. Pahk stated that "he wanted to remove the testicle because he felt the Plaintiff was intentionally malingering because he was a drug addict and only wanted to continue receiving pain medication."  *Id.*

Following their disagreement over the best course of treatment, Dr. Pahk notified the hospital staff that he had withdrawn from Plaintiff's case and discontinued the medications he had prescribed to treat Plaintiff's condition. Plaintiff asserts that his condition began to deteriorate quickly, and he requested his nurse to inform Dr. Pahk that "he would consent to the surgery 'just to get this over with' because the pain was unbearable" (Dkt. 2 at 19). Plaintiff had at this time been hospitalized nearly a week.

Plaintiff was transferred to Memorial Hospital in Jacksonville, Florida, where he was admitted on November 2, 1999.  Following his initial examination at Memorial, an unidentified

-3-

doctor evaluated Plaintiff's condition and determined that it was medically necessary that the right testicle be removed. These events culminated in the surgical removal of the afflicted testicle on November 3, 1999 (Dkt. 2, Ex. A).

### Discussion

In any § 1983 action, the initial inquiry must focus on whether two essential elements are present:

(1)  whether the person engaged in the conduct complained of was acting under color of state law; and

(2)  whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

*Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir. 1996) (citations omitted); *see also Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995).

Defendants[2] are state actors. Thus, the pivotal question is whether Plaintiff has suffered a violation of constitutional magnitude.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (internal quotation omitted). Thus, under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries. *See id.* at 103-05. To state a viable claim for deliberate indifference, a prisoner must allege facts which demonstrate: (1) an objectively serious

---

[2]Defendant Pahk was terminated as a party respondent on March 30, 2004, upon receipt of a joint stipulation dismissing the claims against him with prejudice (Dkt. 22).  Adventist Health System's motion to dismiss Plaintiff's medical malpractice claims as untimely under the applicable statute of limitations was granted on August 3, 2005 (Dkt. 74). Plaintiff's claims for monetary compensation, both compensatory and punitive, were stricken from the complaint as to the Florida Department of Corrections on May 20, 2005 (Dkt. 71).

medical need, and (2) that Defendants acted with deliberate indifference to that need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

Plaintiff evidenced a "serious medical need." However, to show that Defendants were deliberately indifferent to his needs, Plaintiff must allege facts which demonstrate that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." *Id.* In this regard, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[ ] of treatment" does not give rise to a claim for deliberate indifference. *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." *Id.* (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991); *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989).

"Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation and citation omitted). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." *Harris,* 941 F.2d at 1510 (quoting *Brown v. Beck,* 481 F.Supp. 723, 726 (S.D.Ga. 1980) (Bowen, J.)). Only a showing of *deliberate* indifference gives rise to a constitutional injury.

Premised on his disagreement with Defendant Pahk regarding the appropriate course of treatment for Plaintiff's physical complaints rather than indifference to his medical needs, Plaintiff's complaint fails. Nothing in the complaint supports an inference that Defendant Triado-Montes or any other member of the HCI medical staff acted with indifference to Plaintiff's medical needs – deliberate or otherwise.[3]  There is nothing before the Court that supports Plaintiff's claim that the Defendants' conduct, separately or in conjunction, rise to the level of a violation of constitutional magnitude. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986).  This is, at most, an issue of misdiagnosis or medical malpractice. The deficiency in the complaint cannot be cured by discovery or amendment.

ACCORDINGLY, the Court **ORDERS** that:

1.   Plaintiff's Second Amended Complaint (Dkt. 69) is **DISMISSED** without prejudice to Plaintiff's pursuing any remedies that may be available to him in state court.

2.   The clerk shall enter judgment against Plaintiff, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 29, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties/Counsel of Record
SA:jsh

---

[3]*See Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) ("allegations of inadvertent failure to provide adequate medical care, or of a negligent . . . diagnos[is] simply fail to establish the requisite culpable state of mind. . . . It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause "(emphasis in original; citations omitted; internal quotation marks omitted)).

-6-